JUSTUS J. SMITH *vs.* BENJAMIN L. EMERSON & others.

Essex. Nov. 7, 1878. — Jan 28, 1879. ENDICOTT & LORD, JJ., absent.

A building contract between A. and B. provided that A. should do the work and find the materials, and B. should pay for laying the brick, and furnishing all necessary stock, except the brick, at $14.00 per thousand, measurement 24 brick per cubic foot, less $7.45 per thousand to be paid by B. for the brick and freight. *Held*, that a sale of the brick to A. was not contemplated by the terms of the contract; that the difference between these sums was the price to be paid A. for laying the brick and furnishing materials necessary therefor, estimating twenty-four bricks to a cubic foot, and not the actual number laid; and that parol evidence was not admissible in explanation of the intent of the parties.

If a person furnishes labor and materials in the erection of a building, under an entire contract for a round sum, and cannot maintain a lien for the materials for want of the notice to the owner of the land of his intention so to do, required by the Gen. Sts. *c.* 150, § 2, he cannot maintain a lien for the labor, under the St. of 1872, *c.* 318, without showing what the labor alone was worth.

PETITION to enforce a mechanic's lien, alleging that the petitioner made a contract in writing with Luther D. Stiles to furnish the labor and materials, except the brick, necessary in doing the mason-work required in the erection of a block of buildings in Lawrence, according to specifications furnished by Stiles,

and describing the land by metes and bounds; that, at the time of the performance of the labor thereon, the lot was the property of Benjamin L. Emerson or of Carrie M. Stiles; that the petitioner fully performed -the contract on his part, and furnished extra labor, by direction of Stiles, to the amount of $110; that he began to furnish labor and materials on July 13, 1875, and ceased on November 11, 1875; that the total amount due him for labor and materials and extra work was $7544.10; that he had made a discount of $3275.15 on the brick and freight as agreed in the contract, and had received on account from Stiles and Emerson $3430; that these two sums, amounting to $6705.15, were the only just credits, and that he had applied them in payment for the materials furnished by him so far as necessary to pay for the same; that the balance of said sum he had applied to the payment for the labor furnished; and that there was still due him for labor the sum of $838.95.

The petition further alleged that Luther D. Stiles had authority from and was rightfully acting for the owner of the land in procuring the labor and materials which the petitioner furnished in the erection of said building; that he prepared, and on December 9, 1875, filed in the city clerk's office for the city of Lawrence, a statement in writing subscribed and sworn to by him, containing a just and true account, with all just credits given, of the amount due him for labor furnished by him as a mason in the erection of said building, with a description of the property intended to be covered by the lien sufficiently accurate for identification, with the name of the owner.

The prayer of the petition was, that the premises might be sold, and the proceeds of the sale applied to the discharge of the petitioner's claim for $838.95 for labor furnished by him on said building, together with interest and costs.

The certificate of lien set forth the account as above stated.

Trial in the Superior Court, without a jury, before *Brigham*, C. J., who found that on July 13, 1875, the respondent Luther D. Stiles had a bond from the respondent Benjamin L. Emerson, for a conveyance to Stiles of the land described in the petition, Emerson being then the owner in fee of the land; and that on July 13, 1875, Stiles made the following contract with the petitioner, which was partly in the handwriting of Emerson:

" The following agreement between Luther D. Stiles and J. J. Smith is, that said Smith is to accomplish the work, and find materials as set forth, and said Stiles is to pay for laying the common brick and furnishing all necessary stock, except the brick, at $14.00 per thousand, measurement 24 brick per cubic foot, less $7.45 per thousand, to be paid by said Stiles to Sargent and R. R. Co., for the brick and freight; the said Smith to take the brick on the cars in Lawrence; and for the face brick and the stock necessary for laying, except the brick and staging, at $24.00 per thousand, measurement 24 brick per cubic foot, less $17.20, to be paid by said Stiles to Sargent and R. R. Co., for the brick and freight, the said Smith taking the brick on the cars in Lawrence, including walls and piers and all brick-work about the block, except jobbing, done upon this contract to pay the said Smith of this amount eighty per cent every Saturday as the work progresses, and the balance thirty days from the time the walls and chimneys are topped out. This agreement to cover all brick-work, and stock therefor, except the brick, necessary to complete said Stiles's projected block of stores in Lawrence, Mass., upon land described in said Stiles's bond therefor, upon which he has already put in the foundation."

On the same day, the respondent Emerson executed, and delivered to the petitioner, a paper, whereby, in consideration of $100 to be paid by Smith, he guaranteed to Smith on the completion of his contract of even date, " for furnishing all the labor and stock except bricks," for the erection and completion of a block of stores on the land described in his bond, the sum of four thousand dollars, " this guaranty not to cover any loss of time, delay or damage by whomsoever occasioned, or extras, for which I do not hold myself responsible, but only guaranteeing payment upon accomplishment as aforesaid, the whole to be accomplished by the said Smith, within two months from this date. And it is not the intention of this guaranty to do anything except to insure the payment of the money as aforesaid, for the consideration mentioned, and not in any event to charge said land with a lien by virtue of chapter one hundred and fifty of the General Statutes of this Commonwealth, or acts amendatory thereof."

The petitioner began work, in the performance of his contract with Stiles, on July 13, 1875, and ceased work on November 11,

1875, furnishing all the stock and materials, excepting the brick furnished by Stiles under his contract with the petitioner. Under that contract, the petitioner received three hundred and eighty-one thousand nine hundred common bricks, and twenty-five thousand face bricks, and laid the same in erecting the building. By measurement made of the brick-work of the building, it appeared that the number of cubic feet thereof, upon the supposition that twenty-four bricks were laid in each cubic foot, would have required four hundred and eighty-five thousand nine hundred common bricks, and twenty-five thousand face bricks. The petitioner contended that, upon the legal construction of the contract, he was entitled to be paid for laying the bricks as if he had laid twenty-four bricks in every cubic foot, irrespective of the number of bricks actually laid in each cubic foot, and, upon this basis, made and filed his certificate, statement and account of labor in the office of the clerk of the city of Lawrence, within thirty days after November 11, 1875.

There was no evidence, at the trial, of the quantity or value of lime, sand, hair, and other stock and materials, exclusive of bricks, provided or used by the petitioner in erecting the buildings; or any evidence tending to prove how much of the balance of account, claimed by the petitioner in his petition, was for labor, and how much of it was for stock and materials, provided or used by him, in the erection of the building. The extra labor was furnished more than thirty days before the petitioner filed his certificate of lien. The petitioner received the sum of $3430.00, which was paid to him by Emerson. At the trial, the petitioner admitted that he had received $100 more than the sum of $3430.00, and said he was ready to allow a further credit of $100, the consideration named in the respondent Emerson's guaranty, hereinbefore set forth. These inaccuracies in the petitioner's statement of his account, contained in his certificate, the judge found were not due to petitioner's wilfully and knowingly claiming more than was his due.

The judge also found that the petitioner erected the buildings, under his contract with Stiles, with the consent of Emerson, and that Emerson advanced to Stiles substantially all the money paid to the petitioner under the contract, and paid for the bricks furnished to the petitioner under the contract; and that such

advances and payments were contemplated by him and Stiles, when Stiles contracted with the petitioner for the erection of the building; that Emerson was also present from time to time directing the work done by the petitioner in erecting said buildings, both the extra work and the work done by the petitioner under his contract with Stiles.

The judge also found that, upon the construction of the contract between Stiles and the petitioner, contended for by the respondents, namely, that such contract entitled the petitioner to be paid $14.00 less $7.45, that is to say, $6.55 for each thousand of common brick actually laid by him, and $24.00 less $17.20, that is to say, $6.80 for each thousand of face brick actually laid by him, the respondents had fully paid the petitioner, and that nothing was due to him under the contract for labor or materials or for extra work, or use of derrick in erecting the building; that, upon the construction of the contract contended for by the petitioner, the balance of account between the petitioner and Stiles, under the contract, and for extra work, was the sum of $638.95.

On November 6, 1875, Emerson conveyed the land in question to Carrie M. Stiles, wife of Luther D. Stiles, and on the same day the same land was mortgaged to Emerson by Carrie M. Stiles.

The petitioner contended that the contract was obscurely expressed, and offered evidence of the situation of the parties to it, the circumstances under which the contract was made, and of the intent of the parties at the time of making it, for the purpose of determining the true meaning thereof. The judge rejected the evidence offered, and ruled that the respondents' construction of the contract was correct.

The petitioner also asked the judge to rule as follows: "Although the petitioner entered into a contract with Stiles, to erect said building on land of Emerson, with an understanding between him and the respondents that Stiles had a bond from Emerson for a conveyance of the land, yet, it appearing as a fact that, after the execution of said contract, Stiles never purchased the premises, or performed his part of the contract with the petitioner, but that Emerson purchased all the bricks and lumber used in erecting the building, and paid the petitioner for his

labor and materials on the same, so far as he was paid, and in accordance with the contract; that Emerson was often present during the erection of the building, and directing as to the manner of building the same; that the petitioner, during his work on the building, always acted under the direction of Emerson, and received his pay from him and from no one else; and that, so far as the facts disclose, Stiles never had any interest in the said building or gave any orders concerning erecting the same; Emerson would be deemed in fact and in law to have been the purchaser of all the materials and labor furnished and used in the erecting of said building, and to have assumed said Stiles's contract as his own; and that therefore the petitioner has a lien on said premises, as against Emerson, for his labor and materials furnished under the contract, and also a lien on the same, against Emerson, for a general balance of account." The judge refused so to rule; but ruled, that, irrespective of the disputed construction of said contract, the petition could not be maintained for a general balance of account between the parties, under the contract between the petitioner and Stiles; that the petitioner could not maintain the petition for extra work, because the same ceased more than thirty days before the petitioner filed his certificate of lien in the office of the clerk of the city of Lawrence; and that upon the certificate, the facts alleged in the petition, and the facts found at the trial, hereinbefore stated, the petition could not be maintained; and ordered judgment for respondents. The petitioner alleged exceptions.

*J. C. Sanborn*, for the petitioner.

No counsel appeared for the respondents.

SOULE, J. By the true construction of the contract between the petitioner and Stiles, and the conduct of the parties thereunder, the petitioner did not furnish the brick for the block of stores. The statement of one price for the brick, and another price for the brick when laid, was adopted as a mode of computing the price which the petitioner was to be paid for labor and material and stock furnished in laying the brick; and a sale of the brick to him was not contemplated. *Westfield* v. *Mayo*, 122 Mass. 100. The petitioner, therefore, has at best only a demand for labor and materials furnished under a written contract in which no separate price for labor is specified, and no evidence

was offered by means of which it could be determined what part of the demand was for labor, or what part was for material. The petitioner cannot maintain a lien for the whole balance due him for labor and material, because his contract was not with the owner of the land, and he did not give the notice required by the statute of his intention to claim a lien for materials furnished.   Gen. Sts. *c.* 150, § 2.

He cannot maintain a lien for the labor, because he has not been able to show distinctly what the labor is worth, nor what part of his demand is for labor.   St. 1872, *c.* 318.   And until the last-named statute was enacted no lien existed for the labor done or furnished under an entire contract for labor and materials, when there was no lien for the materials.   *Graves* v. *Bemis*, 8 Allen, 573.   *Morrison* v. *Minot*, 5 Allen, 403.

In this view of the case, the construction of the contract so far as it relates to the number of brick for which the petitioner was entitled to be paid would be unimportant, but for the question whether the petitioner can maintain a lien for the extra work; but as the construction which we give the contract disposes of that question, as well as of his demand under the contract, it is proper that it should be stated.

As has been already indicated, the petitioner did not furnish the brick.   There is no reason, therefore, why his account should charge Stiles with them.   It should merely charge him with the agreed price for laying, including labor and materials, in one price, which is $6.55 per thousand for common brick, and $6.70 per thousand for face brick.   As it was agreed that he should be paid at the rate of twenty-four brick to the cubic foot, he is entitled to the benefit of that stipulation, and to be paid for the constructive laying of one hundred and four thousand brick, that being the number by measure in excess of the number by count.   If the account is made up in this way, it appears clearly that the petitioner has been paid more than his work and materials under the contract, his extra work, and the use of the derrick amount to. The error in his statement of his demand lies in his charging Stiles with both the price and the cost of laying the one hundred and four thousand of brick, which existed only by virtue of the arbitrary allowance of twenty-four brick to the cubic foot, and failing to credit him with the price of the same, which error

made Stiles his debtor, in excess of the truth, by the sum of $774.80.

The construction of the contract was for the court, and the evidence offered in explanation of it was properly rejected. The ruling asked for was properly refused, for there was no evidence which would justify the ruling, as matter of law, or the finding, as matter of fact, that Emerson was the purchaser of the material or had assumed Stiles's contract. His conduct in the matter is fully explained by his having guaranteed the performance of the contract on the part of Stiles. Moreover, neither the certificate recorded in the office of the city clerk, nor the petition, is based on the theory that the brick were laid under a contract with Emerson. The ruling that the petition could not be maintained was correct.                    *Exceptions overruled.*